IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

JOY WALKER            )
                      )
v.                    )      No. 3:20-0342
                      )
ANDREW M. SAUL        )
Commissioner of Social Security )

**To:    The Honorable Aleta A. Trauger, District Judge**

## REPORT AND RECOMMENDATION

Plaintiff filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of the final decision of the Social Security Administration ("Commissioner" or "Defendant") denying Plaintiff's claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") as provided under Titles II and XVI, respectively, of the Social Security Act. The case is currently pending on Plaintiff's motion for judgment on the administrative record (Docket No. 23), to which Defendant has filed a response. (Docket No. 24.) Plaintiff has also filed a reply to Defendant's response. (Docket No. 25.) This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for initial consideration and a Report and Recommendation. (Docket No. 7.)

Upon review of the administrative record as a whole and consideration of the parties' filings, the undersigned Magistrate Judge respectfully recommends that Plaintiff's motion (Docket No. 23) be **DENIED**.

## I. INTRODUCTION

Plaintiff filed an application for DIB on December 30, 2015. (*See* Transcript of the Administrative Record (Docket No. 21) at 69.)[1] She alleged a disability onset date of April 22, 2009 and asserted that she was unable to work because of knee pain, back pain, a past gastric bypass procedure, and depression. (AR 69, 71.) Plaintiff's applications were denied initially and upon reconsideration. (AR 69-70.)

Plaintiff again filed applications for DIB and SSI on June 19, 2017. (AR 81-82.) She again alleged a disability onset date of April 22, 2009 and that she was unable to work because of knee pain, back pain, a past gastric bypass procedure, and depression. (AR 81, 94.) These applications were denied initially and upon reconsideration. (AR 81-82, 96-97.) Pursuant to her request for a hearing before an administrative law judge ("ALJ"), Plaintiff appeared and testified at a hearing before ALJ Brian Dougherty on January 25, 2019. (AR 30.) The ALJ denied the claim on April 18, 2019. (AR 9-11.) The Appeals Council denied Plaintiff's request for review of the ALJ's decision on February 21, 2020 (AR 1-4), thereby making the ALJ's decision the final decision of the Commissioner. Plaintiff subsequently filed the instant action and the Court has jurisdiction. 42 U.S.C. § 405(g).

## II. THE ALJ FINDINGS

The ALJ's unfavorable decision included the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.

2. The claimant has not engaged in substantial gainful activity since April 22, 2009, the alleged onset date (20 CFR 404.1571 *et seq.,* and 416.971 *et seq.*).

---

[1] The Transcript of the Administrative Record will be referenced by the abbreviation "AR" followed by the corresponding page number(s) as numbered in the large black Bates stamps on the bottom right corner of each page.

2

3. The claimant has the following severe impairment: osteoarthritis of both knees (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can stand and/or walk for 4 hours in an 8-hour day. The claimant can occasionally perform postural activities, but can never kneel, crawl or climb ladders. The claimant must avoid concentrated exposure to extreme temperatures, vibrations and hazards.

6. The claimant is capable of performing past relevant work as an Office Manager (DOT No. 169.167-034, Sedentary, SVP-7). This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined in the Social Security Act, from April 22, 2009, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(AR 14-22.)

### III. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of the administrative record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

### IV. DISCUSSION AND CONCLUSIONS OF LAW

**A. Standard of Review**

The determination of disability under the Act is an administrative decision. The only questions before this Court upon judicial review are: (i) whether the decision of the Commissioner is supported by substantial evidence, and (ii) whether the Commissioner made legal errors in the process of reaching the decision. 42 U.S.C. § 405(g). Substantial evidence is defined as "such

3

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hargett v. Comm'r of Soc. Sec.*, 964 F.3d 546, 551 (6th Cir. 2020) (internal citations omitted). If substantial evidence supports the ALJ's decision, that decision must be affirmed "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Put another way, the ALJ's decision must be affirmed if his or her "findings and inferences are reasonably drawn from the record or supported by substantial evidence even if that evidence could support a contrary decision." *Wright-Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, 395 (6th Cir. 2010).

The Commissioner utilizes a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a). If the issue of disability can be resolved at any point during the evaluation, the ALJ does not proceed to the next step and the claim is not reviewed further. *Id*. First, if the claimant is engaged in substantial gainful activity, she is not disabled. *Id.* Second, the claimant is not disabled if she does not have a severe medically determinable impairment that meets the 12-month durational requirements. *Id.* Third, the claimant is presumed disabled if she suffers from a listed impairment, or its equivalent, for the proper duration. *Id.* Fourth, the claimant is not disabled if, based on her residual functional capacity ("RFC"), she can perform past relevant work. *Id.* Fifth, if the claimant can adjust to other work based on her RFC, age, education, and work experience, she is not disabled. *Id.* The claimant bears the burden of proof through the first four steps, while the burden shifts to the Commissioner at step five. *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

The Court's review of the Commissioner's decision is limited to the record made during the administrative hearing process. *Jones v. Berryhill*, 392 F. Supp. 3d 831, 843 (M.D. Tenn. 2019)

4

(citing *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991)). A reviewing court is not permitted to try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (citing *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)).

### B. The ALJ's Five-Step Evaluation of Plaintiff

In the instant case, the ALJ resolved Plaintiff's claim at step four of the five-step process. The ALJ found that Plaintiff met the first two steps, but found at step three that Plaintiff was not presumptively disabled because she did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. At step four, the ALJ found that Plaintiff was able to perform past relevant work and therefore not disabled. (AR 14-22.)

### C. Plaintiff's Assertions of Error

Plaintiff presents two assertions of error: (1) that the ALJ failed to properly weigh Plaintiff's subjective complaints; and (2) that the ALJ both failed to adequately consider the opinion evidence and failed to develop the record concerning Plaintiff's allegedly worsening condition. (Docket No. 23-1 at 9.) Plaintiff therefore requests that the Commissioner's decision be reversed, and that this matter be remanded pursuant to sentence four of 42 U.S.C. § 405(g) for additional consideration. (*Id*. at 18.)

Sentence four of 42 U.S.C. § 405(g) states the following:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

If the case contains an adequate record, "the [Commissioner's] decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Hudson-*

5

*Kane v. Berryhill*, 247 F. Supp. 3d 908, 914 (M.D. Tenn. 2017) (quoting *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985)). However, benefits may be awarded immediately "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Holtman v. Saul*, 441 F. Supp. 3d 586, 609 (M.D. Tenn. 2020) (quoting *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994)). The Court addresses Plaintiff's assertions of error below.

### 1. Allegations of Disabling Pain.

The ALJ's opinion includes a finding that Plaintiff's statements regarding the severity of her alleged symptoms – primarily those relating to osteoarthritis in the bilateral knees – were "not entirely consistent with the medical evidence and other evidence in the record[.]" (AR 17.) The ALJ cited multiple pieces of evidence in support of this conclusion, including relatively mild examination findings and Plaintiff's failure to pursue certain courses of treatment recommended by treating providers. Plaintiff contends that the overall evidence instead corroborates Plaintiff's allegations, and that the ALJ impermissibly failed to take Plaintiff's inability to afford recommended treatment into consideration when evaluating her symptoms.

If a claimant alleges the existence of disabling symptoms, the ALJ is required to evaluate the symptoms pursuant to a two-step process formulated by the Sixth Circuit in *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847 (6th Cir. 1986). The ALJ first determines whether there is objective medical evidence of an underlying condition and, if so: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such severity that it can reasonably be expected to produce the alleged disabling pain. *Id.* at 853.

The Commissioner subsequently incorporated this standard into Social Security Ruling ("SSR") 16-3p, which requires the ALJ to consider a claimant's "statements about the intensity, persistence, and limiting effects of the symptoms" and "evaluate whether the statements are consistent with objective medical evidence and other evidence." 2017 WL 5180304, at *6 (October 25, 2017). This evaluation is based on seven factors that include: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the alleged pain or other symptoms; (3) any precipitating or aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant uses; (5) the claimant's non-medication treatment; (6) any measures other than treatment the claimant employs to relieve pain or other symptoms; and (7) other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. *Id*. at *7-8 (citing 20 C.F.R. § 404.1529(c)(3)).[2] SSR 16-3p's predecessor, SSR 96-7p, required the ALJ to make a "credibility" determination based on the claimant's statements about the limiting effects of her alleged symptoms. 1996 WL 374186, at *3 (July 2, 1996). The Commissioner removed any reference to "credibility" in SSR 16-3p, although there appears to be no substantive change in the ALJ's analysis and nothing to suggest that case law pertaining to credibility evaluations under SSR 96-7p has been abrogated. *See Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 n.1 (6th Cir. 2016) (noting that SSR 16-3p removed the term "credibility" only to "clarify that subjective symptom evaluation is not an examination of an individual's character"). Courts therefore continue to accord "great weight and deference" to an ALJ's determination regarding the consistency of a claimant's allegations, *Calvin v. Comm'r of Soc. Sec.*, 437 F. App'x 370, 371 (6th Cir. 2011), which means that claimants seeking to overturn the ALJ's

---

[2] For SSI applications, the corresponding regulation containing the relevant factors is 20 C.F.R. 416.929(c)(3).

7

decision "face an uphill battle." *Daniels v. Comm'r of Soc. Sec.*, 152 F. App'x 485, 488 (6th Cir. 2005).

There is clearly objective evidence of an underlying medical condition related to Plaintiff's knees in the instant matter. Imaging conducted in March 2017 confirms the existence of tricompartmental joint disease in the left knee, as well as "prominent" tricompartmental osteoarthritis with severe joint space narrowing in the right knee. (AR 408-09.) The question is thus whether substantial evidence supports the ALJ's evaluation of the symptoms that could reasonably be expected to emanate from this condition.

One hurdle for Plaintiff in this case is the date last insured ("DLI"), which is the final date on which a claimant retains insured status for purposes of a Title II DIB claim. Plaintiff's DLI is December 31, 2014, which means that she must prove that her alleged disability began on or before December 31, 2014 to establish eligibility for DIB. (AR 12.) And the Sixth Circuit has confirmed that the claimant "bears the burden of establishing that a disability began before [her] disability insurance expired[.]" *Seeley v. Comm'r of Soc. Sec.*, 600 F. App'x 387, 390 (6th Cir. 2015).

Defendant also notes that during the relevant time period – i.e. between the alleged onset date of April 1, 2009 and December 31, 2014 – the record shows that Plaintiff received medical treatment on just one occasion in July of 2014. The sole purpose of this visit was to procure medication refills for her "uncontrolled" hypertension. (AR 360.) Although "arthritis" is a diagnosis identified in the accompanying office note, Plaintiff's musculoskeletal symptoms were noted to be within normal limits upon examination. (AR 360.) There is thus no evidence in the administrative record indicating that Plaintiff began experiencing disabling symptoms prior to the expiration of her insured status.

8

Plaintiff attempts to circumvent this barrier by arguing that "the absence of evidence is not the evidence of absence" (Docket No. 25 at 1-2), a position that is incompatible with Sixth Circuit guidance regarding the relevant scope of inquiry. *See Nagle v. Comm'r of Soc. Sec.*, 191 F.3d 452 (table), 1999 WL 777355, *1 (6th Cir. September 21, 1999) ("Evidence relating to a time outside the insured period is only minimally probative[.]") (citing *Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987)). Even accepting Plaintiff's position that the Court can and should infer the existence of a disabling condition prior to the DLI, her own brief identifies September 7, 2017 – nearly three years after the DLI – as the earliest date that any functional physical limitations were documented (Docket No. 23-1 at 14), which prevents the evidence from having any application to the DIB claim. *See King v. Sec'y of Health & Hum. Servs.*, 896 F.2d 204, 205-06 (6th Cir. 1990) (affirming ALJ's finding that "musculoskeletal difficulties" were not disabling despite diagnosis of degenerative disc disease six months after the DLI); *Higgs v. Bowen,* 880 F.2d 860, 863 (6th Cir. 1988) (finding evidence of a condition documented two years after the DLI were minimally probative). The Court therefore sees nothing to support a finding of reversible error in the Commissioner's decision with respect to Plaintiff's DIB claim. *See Walton v. Astrue*, 773 F. Supp. 2d 742, 750 (N.D. Ohio 2011) ("A claimant must provide medical evidence of [her] impairments during the time [she] say[s] that [she is] disabled.") (internal citations and quotations omitted).

The Court must nonetheless consider post-DLI evidence in connection with Plaintiff's SSI claim, which is not bound by the same insured requirements.[3] Again, however, the Court finds no reversible error in the ALJ's opinion, which sets forth multiple reasons for finding that Plaintiff's

---

[3] The relevant regulation pertaining to SSI states as follows: "When you file an application in the month that you meet all the other requirements for eligibility, the earliest month for which we can pay you benefits is the month following the month you filed the application." 20 C.F.R. § 416.335.

9

Case 3:20-cv-00342    Document 26    Filed 07/15/21    Page 9 of 17 PageID #: 561

allegations were not entirely consistent with the record evidence. The ALJ noted that despite Plaintiff's claim that she needs to elevate her legs whenever she sits to reduce swelling in her knee, the record indicates that she reported no such issues with sitting to her primary care provider and exhibited no edema in her lower extremities during any office visit save for one, during which she exhibited just "mild" edema. (AR 20.) The ALJ discussed numerous mild examination findings documented during the course of Plaintiff's treatment, including those expressed by Dr. Roy Johnson, who conducted a consultative examination on September 15, 2017 and found that Plaintiff was not subject to any sitting restrictions. (AR 19, 412.) The ALJ additionally noted that despite Plaintiff's use of a cane, there was no indication that a walking device was ever prescribed or deemed medically necessary by a provider. (AR 20.) The ALJ further highlighted the absence of any recommendation from a provider that Plaintiff undergo knee replacement surgery, as well as Plaintiff's failure to seek suggested treatment in the form of steroid injections.

Regarding her purported failure to pursue recommended treatment, Plaintiff alleges that the ALJ failed to adequately consider her testimony that she was unable to afford relevant treatment. (AR 44.) Although Plaintiff concedes that the ALJ discussed her lack of insurance in his opinion (AR 17), she claims that there is "no indication that the ALJ considered insurance later in the context of his discussion of treatments," and that the ALJ's reference to Plaintiff's failure to "follow[] up with a provider that did injections" (AR 20) proves that the ALJ improperly disregarded her hearing testimony. (Docket No. 23-1 at 12.)

The Court disagrees with Plaintiff's contention. An exacting review of the records in question suggests that Plaintiff would potentially need financial assistance only for additional imaging at a radiology clinic, but not necessarily for steroid injections. (AR 385.)[4] Moreover,

---

[4] One of the relevant notations from the primary care provider reads in full: "Notes: discussed options to be able to obtain further imagining (financial aid [with] premier radiology).

10

Plaintiff testified only that her lack of insurance prevented her from undergoing a knee replacement operation, not that she was unable to afford steroid injections. (AR 44.)

The Court is sympathetic to Plaintiff's financial difficulties and raises theses distinctions not to minimize the gravity of Plaintiff's situation, but because claimants who allege that they forewent recommended treatment based on economic hardship "must present evidence that they sought (and were denied) treatment due to financial reasons." *Prince v. Saul*, No. 1:19-CV-317, 2021 WL 1108583, at *4 (E.D. Tenn. Mar. 23, 2021). Here, the ALJ noted that Plaintiff "verbalized her understanding" of her primary care provider's treatment plan, which included no discussion of needing assistance to pay for steroid injections. (AR 19.) Because Plaintiff has identified no other evidence suggesting that she was unable to afford these injections, as is her burden, *Tollison v. Colvin*, No. 2:12-cv-0004, 2014 WL 2864204, at *7 (M.D. Tenn. June 24, 2014), the Court cannot reasonably conclude that the ALJ erred by relying on Plaintiff's failure to obtain such treatment to find that her allegations were not entirely consistent with the medical evidence. *See Strong v. Soc. Sec. Admin.*, 88 F. App'x 841, 846 (6th Cir. 2004) ("[W]hen a claimant alleges pain so severe as to be disabling, there is a reasonable expectation that the claimant will seek examination or treatment. A failure to do so may cast doubt on a claimant's assertions of disabling pain.").

Even if the ALJ erred in failing to specifically consider Plaintiff's financial situation in assessing the consistency of her allegations, such an error is harmless in light of the other substantial evidence contained in the record to support his findings. *Staples v. Berryhill*, No. 3:13-cv-1031, 2017 WL 1364671, at *9 (M.D. Tenn. Apr. 14, 2017). *See also Ulman v. Comm'r of Soc.*

---

[Patient] may take [over the counter] Tylenol as well as prescribed NSAID ([in] moderation) for pain relief. Patient encouraged to continue physical activity as is a first line therapy for arthritis. [Patient] may schedule [with] provider that does joint injections. [Patient] verbalized understanding." (AR 385.) Another notation reads: "[Patient] encouraged to go ahead and discuss financial aid [with] Premier Radiology in case further imaging is warranted. [Patient] verbalized understanding." (AR 390.)

11

*Sec.*, 693 F.3d 709, 714 (6th Cir. 2012) (noting that "harmless error analysis applies to credibility determinations in the social security disability context"). For example, Plaintiff testified during the administrative hearing that she would be unable to perform even a "sit-down type job" based on a need to elevate her legs "most of the day." (AR 40, 42, 44.) This suggests that the swelling Plaintiff experiences when she sits down is a severe and constant symptom, and thus one that should have featured prominently in records documenting her treatment. The ALJ emphasized, however, that Plaintiff mentioned a need to elevate her feet due to knee swelling only once to a provider – during a visit on January 29, 2019, four days after the administrative hearing was conducted – and that she consistently exhibited no edema in her knees. (AR 20, 418, 420.) The ALJ noted that Plaintiff instead reported to her primary care provider that she experienced "relief" when not standing or walking. (AR 18, 390.)

Plaintiff nevertheless challenges the ALJ's findings based on certain examination findings documented by nurse practitioner Angela Crague between September 2016 and January 2019, including decreased range of motion in her knees on September 7, 2017. (Docket No. 23-1 at 14.) Notably, however, Plaintiff exhibited a normal gait during both this office visit and a subsequent visit on August 20, 2018. (AR 425, 428.) She also reported no problems with sitting during these visits, in contrast to her hearing testimony suggesting that she would have to elevate her legs for the majority of the workday. The Court further notes that Plaintiff indicated in a function report completed as part of her application for benefits that her alleged impairments did *not* affect her ability to sit (AR 245), which, as noted by the ALJ, is consistent with the absence of any complaints to the primary care provider about her ability to sit. (AR 20.) It was therefore not unreasonable for the ALJ to find that Plaintiff's allegations were not entirely consistent with the administrative record based on the lack of evidence suggesting ongoing problems with knee swelling while

12

sitting. *See Peterson v. Comm'r of Soc. Sec.*, 552 F. App'x 533, 540 (6th Cir. 2014) ("Merely marshalling evidence to suggest that he is disabled, however, is insufficient; to prevail on appeal, Peterson must demonstrate that the ALJ's determination that he was not disabled is not supported by substantial evidence.").

As mentioned above, the Sixth Circuit has made clear that a reviewing court must show significant deference to an ALJ's evaluation of a claimant's allegations of disabling pain. *See Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 476 (6th Cir. 2016) ("While in theory we will not disturb an ALJ's credibility determination without a compelling reason ... in practice ALJ credibility findings have become essentially unchallengeable.") (internal citations and quotations omitted). Because the ALJ's findings in this regard were "reasonable and supported by substantial evidence," they must be affirmed. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 249 (6th Cir. 2007). This assertion of error is therefore rejected.

**2. Opinion Evidence**

Plaintiff's next assertion of error involves the ALJ's conclusion that Plaintiff's RFC allows her to perform a range of light work. (AR 16.) The RFC is based largely on the opinion provided in Dr. Johnson's consultative examination report, which holds that Plaintiff can lift and carry up to 20 pounds occasionally, stand and walk for up to four hours during an eight-hour workday (with frequent breaks), and that Plaintiff is not subject to any sitting restrictions. (AR 411-12.) The ALJ found this opinion "more persuasive" than the other two medical opinions contained in the record – those belonging to the two non-examining agency physicians who concluded that Plaintiff could sit for just six hours per workday – in light of Dr. Johnson's physical examination of Plaintiff, as well as the opinion's consistency with the "overall evidence" and the absence of any countervailing opinions. (AR 21.)

Pursuant to the operative regulation for disability applications filed after March 27, 2017, the ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)[.]" 20 C.F.R. § 404.1520c(a). The ALJ is instead directed to consider the "persuasiveness" of the medical opinions based on five categories that include "supportability," "consistency," "relationship with the claimant," "specialization," and "other factors" such as the medical source's "familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." *Id.* §§ 404.1520c(a)-(c). The regulation makes clear that the two most important factors are supportability and consistency. *Id.* § 404.1520c(a).

Plaintiff argues here that the ALJ failed to account for alleged inconsistencies between Dr. Johnson's opinion and the administrative record by contrasting Dr. Johnson's diagnoses of "low back syndrome" and "history of gastric bypass surgery" with the ALJ's step two finding that "osteoarthritis of both knees" represents the only "severe" impairment at issue in this case. (AR 15, 411-12.) Plaintiff additionally asserts that the ALJ failed to account for her worsening condition, as evidenced by medical records documenting treatment with a nurse practitioner following the issuance of Dr. Johnson's opinion. (Docket No. 23-1 at 17.)

The Court does not find reversible error based on the different diagnostic labels used by the ALJ and Dr. Johnson given the well-established principle that disability is determined not by the diagnosis of a condition, but rather the functional limitations imposed by a condition. *Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014). *See also Higgs*, 880 F.2d at 863 ("The mere diagnosis of [an impairment], of course, says nothing about the severity of the condition."). The ALJ clearly recognized the diagnoses of "low back syndrome" and "status post gastric bypass" in his opinion despite finding that such conditions were not "severe" under 20 C.F.R. § 404.1520,

14

Case 3:20-cv-00342   Document 26   Filed 07/15/21   Page 14 of 17 PageID #: 566

while the ALJ's favorable discussion of Dr. Johnson's report specifically highlighted that the recommended standing/walking limitations were "due to [Plaintiff's] knee crepitus and tenderness." (AR 15, 412.) This is far from "disagreeing on the basis for" Dr. Johnson's opinion, as Plaintiff alleges (Docket No. 25 at 3), and the Court sees no indication that the ALJ otherwise failed to consider the "combined effects of impairments" in violation of 42 U.S.C. § 423(d)(2)(B). *Foster v. Bowen*, 853 F.2d 483, 490 (6th Cir. 1988).

Plaintiff's remaining argument that the ALJ failed to account for alleged inconsistencies between the record evidence and Dr. Johnson's opinion is similarly unavailing. Plaintiff cites just two records for this proposition: office notes from September 7, 2017 and August 20, 2018 that each document "decreased [range of motion] of knees bilaterally." (AR 425, 428.) As previously discussed, however, these records also indicate that Plaintiff retained a normal gait, and other records from her primary care provider document a normal range of motion in the knees. (AR 392, 394, 397.)[5] The ALJ also appropriately noted that Plaintiff's providers placed her under no physical restrictions and in fact repeatedly encouraged regular exercise as a primary method of combatting arthritis. (AR 21.) Such considerations demonstrate consistency with Dr. Johnson's opinion and were properly discussed by the ALJ. *Cf. Warren v. Comm'r of Soc. Sec.*, 810 F. App'x 445, 450 (6th Cir. 2020) (affirming ALJ's decision to discredit severe restrictions recommended by one-time examiner in part because the claimant's "medical providers frequently recommended exercise to treat his condition").

Additionally, the two district court opinions Plaintiff cites to bolster her argument are materially different from the facts comprising the current claim and therefore of little relevance to the Court's review. Plaintiff first references this Court's recommended reversal of the

---

[5] One such record indicates that Plaintiff "[moves all extremities well]." (AR 394.)

15

Commissioner's denial of benefits in *Johnson v. Saul*, a case involving an ALJ's failure to meaningfully explain both a *mental* RFC determination and her consideration of more than 100 pages of *mental* health treatment. No. 1:18-cv-0041, 2019 WL 3647058, at *5 (M.D. Tenn. July 19, 2019), *report and recommendation adopted*, 2019 WL 3574250 (M.D. Tenn. Aug. 6, 2019). As the Court explained, an ALJ's decision to opine on a claimant's mental functionality without relying on a medical opinion is particularly questionable. *See id*. (noting that the "complex nature of mental illness" militated against issuing a mental RFC without the benefit of a medical opinion). Plaintiff raises no argument regarding the ALJ's decision with respect to her mental functionality. The ALJ in *Johnson* also misrepresented relevant evidence in the administrative record to support the RFC formulation, *id*., which, because no such malfeasance has been alleged here, further removes the case from any sphere of applicability.

Plaintiff's citation to a case from the Central District of California is similarly inapposite given that the court in that case based its reversal of the Commissioner's non-disability finding on the ALJ's misidentification of a non-examining opinion as one coming from an examining source, as well as the existence of a treating physician's countervailing opinion. *See V.R. v. Berryhill*, No. CV 17-7060-E, 2018 WL 3239901, at *2-3 (C.D. Cal. June 29, 2018). The court specifically noted that "the opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Id*. at 3 (internal citations and emphasis omitted). Because no such circumstances have been alleged to exist here, that decision has little bearing on the instant matter.

Finally, the Court rejects Plaintiff's contention that the ALJ "should have sought an opinion" from Plaintiff's treating nurse practitioner regarding her allegedly worsening physical condition before issuing a disability decision. It is the claimant's burden to provide evidence

16

demonstrating disability, *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001), and the ALJ here afforded Plaintiff additional time following the administrative hearing to procure an opinion from the nurse practitioner (AR 54-55), which Plaintiff elected not to do. The governing regulation is clearly discretionary, *see* 20 C.F.R. § 404.1520b(b)(2)(i) ("We *may* recontact your medical source.") (emphasis added), and the administrative record provided sufficient evidence for the ALJ to make a disability determination. Because the Court finds no reversible error in the ALJ's consideration of the opinion evidence or the accompanying RFC, this assertion of error is rejected.

## V. RECOMMENDATION

For the above stated reasons, it is respectfully recommended that Plaintiff's motion for judgment on the administrative record (Docket No. 23) be DENIED and the Commissioner's decision be affirmed.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. *See* Fed. R. Civ. P. 72(b)(2); Local Rule 72.02(a). Failure to file specific written objections within the specified time can be deemed to be a waiver of the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Cowherd v. Milton*, 380 F.3d 909, 912 (6th Cir. 2004) (en banc). Any responses to objections to this Report and Recommendation must be filed within fourteen (14) days of the filing of the objections. *See* Fed. R. Civ. P. 72(b)(2); Local Rule 72.02(b).

Respectfully submitted,

BARBARA D. HOLMES
United States Magistrate Judge